No. 12,110.

STATE OF LOUISIANA EX REL. CHARLES A. BUTLER, DISTRICT·
ATTORNEY, VS. HONORABLE J. H. FERGUSON, JUDGE OF THE·
CRIMINAL DISTRICT COURT, SECTION "A."

The respondent judge having granted an order of appeal in favor of the defendant,.
returnable to this court within ten days, from a decree disallowing a change of
*venue:* Held, that *certiorari* is not the proper mode of testing the legality of such
order.

That writ can not be employed as a substitute for a motion to dismiss an appeal.

The orderly and proper course to be pursued is to await action in this court on
the appeal.

*Miller, J., concurring.*—The relator, alleging that the accused is allowed no appeal·
from interlocutory orders, asks for writs of *certiorari* and *mandamus* to set aside
an appeal grant the accused from the judgment refusing him a change of·
venue, the appeal being returnable in ten days now on the point of expiration;
with the prompt and complete remedy of the motion to dismiss the appeal
available to the relator, there is, in my opinion, neither warrant nor necessity
in this case to substitute for that well defined remedy the exercise of our
supervisory jurisdiction. Constitution, Arts. 81, 90. State vs. Hornsby, 8 Rob. 362.

*Nicholls. C. J.,; Breaux, J., dissenting.*

ON APPLICATION for Writs of *Mandamus* and *Certiorari.*

*M. J. Cunningham,* Attorney General, and *Charles A. Butler,* Dis--
trict Attorney, for Relator.

Respondent Judge in *propria persona.*

Submitted on briefs March 25, 1896.
Opinion handed down March 27, 1896.

The opinion of the court was delivered by

WATKINS, J.    Alleging that in a criminal case pending in his court,.
the respondent granted an order of suspensive appeal in favor of·
the defendant, returnable to this court within ten days, from a de-
cree disallowing a *change of venue;* and averring said decree to be·
absolutely null and void, the relator prays for *certiorari* to bring up·

the record from the respondent's court, to the end that the proceedings may be examined and declared absolutely illegal and void; and *for mandamus* to compel the respondent to proceed with the trial of the aforesaid cause.

The principal question we have to examine and decide is, whether relator is entitled to relief by *certiorari;* the *mandamus* is subsidiary thereto, and can not be made effectual without the illegality of the proceedings is first ascertained and decided.

In the brief of relator no authority is cited in support of relief by *certiorari;* consequently, we must make an examination of authority for ourselves.

The province of *certiorari* is to bring up to this court "a copy of *proceedings* in a suit pending (in the court of the respondent) to the end that their *validity* may be ascertained " (C. P. 855) ; and " finding that the *proceedings are regular,*    *    *    *    it shall dissolve the order it has issued." C. P. 865.

In State *ex rel.* Matranga vs. Judge, 42 An. 1089, this court interpreted the relief that is afforded by this writ thus:

" *Certiorari* has never been employed to inquire into the correctness of the judgment rendered where the forms of law have been followed and where the court has jurisdiction, and was, therefore, competent.

"Hence it has been held that the supervisory jurisdiction of this court under *certiorari* must be restricted to an examination into the *external* validity of the proceedings held in the lower court.

"It can not be exercised to review the judgment as to *intrinsic* correctness, either on the law or on the facts of the case.

"The *supervisory* power of this court must not be confounded with its appellate jurisdiction."

And to the same effect are the following cases: State *ex rel.* Valeton vs. Skinner, 33 An. 257; State *ex rel.* Gooch vs. Justice, 38 An. 968.

In State *ex rel.* Block vs. Judge, 41 An. 179, the court said:

"The remedy (by *certiorari*), it has been freqently held, can be invoked only to ascertain the validity of the proceedings before an inferior court *on the face of the papers, and never to inquire into the correctness of decisions, whether interlocutory or definitive,* made in the case.

"Were it otherwise, all cases which are not not now appealable

could be reviewed effectually by the superior court as if they were appealable; and so every judgment rendered by justices of the peace and by District Courts, from which no appeal lies, could be taken to this court and reviewed on their merits, and the judgment annulled or affirmed," etc.

In State *ex rel.* Chandler vs. Judge, 43 An. 826, we said:

" The *supervisory* jurisdiction of this court must not be confounded with its *appellate* jurisdiction. Proceedings (by *certiorari*) have for their object to ascertain, *not the correctness of a judgment, but the validity of the proceedings* in the inferior court, on the face of the. papers."

In the earlier decisions of this court which were rendered soon after the adoption of the present Constitution, Art. 90 of which confers upon this court " general supervision over all inferior courts," are found much the same expressions as those we have cited above.

For instance, in State *ex rel.* Wintz vs. Judge, 32 An. 1225, the court used this language, viz.:

"The Constitution intended that our supervisory jurisdiction should be distinct, in nature as well as in name, from our appellate jurisdiction.

" The former was intended simply *to* enable us to compel inferior courts to perform their functions, to prevent them from exceeding the bounds of their jurisdiction, and to enforce observance of that regularity in their proceedings which is essential to fairness in the conduct of contradictory litigation.

"Mere error in the decision of questions properly submitted to their determination, and regularly determined, can only be corrected in the *exercise of a jurisdiction purely appellate.*"

That decision was examined and approved in State *ex rel.* Patton vs. Judge, 40 An. 393.

In State *ex rel.* Weber vs. Judge, 32 An. 1092, the court said:

" A *certiorari* should not be granted when there exists a remedy by appeal."

In State *ex rel.* Unbehagen vs. Justice, 35 An. 365, it was held that this court, " in the exercise of its supervisory powers over inferior courts, will not transform itself into a court of appeal for the revision of the rulings of such courts."

In State *ex rel.* Insurance Company vs. Judges, 36 An. 316, the court said:

"For this court (by means of *certiorari*) to undertake to revise (a) judgment would be to exercise a purely appellate jurisdiction which, in such matters, we have uniformly declined to do."

In State *ex rel.* Race vs. Judges, 37 An. 120, the court said:

"*Certiorari* issues only to test the validity of proceedings, and not the correctness of judgments by courts of competent jurisdiction. It serves to pass upon questions of *form* and not of *substance.*" State *ex rel.* Wood vs. Judge, 38 An. 377.

In State *ex rel.* Chandler vs. Judge, 44 An. 567, we said:

"Writs of *certiorari* can not be allowed in *appealable* case to reverse *interlocutory decrees* rendered therein. Such decrees may be revised and corrected on appeal."

The most recent expressions of opinion by this court are of similar import. State *ex rel.* Liggins vs. Judge, 47 An. 1022; State *ex rel.* Bassetti vs. Judge, 44 An. 1093; State *ex rel.* Morere vs. Judge, 44 An. 1100; State *ex rel.* Waller vs. Justice, 47 An. 27; State *ex rel.* Evershed vs. Judges, 47 An. 180; State *ex rel.* Manning vs. Justice, 47 An. 1085.

A very careful examination of the decisions of the court embracing a period of fifteen years, clearly indicates its determination to adhere to the terms of the Code of Practice which define the scope and province of the writ of *certiorari*; for it provides that this writ is granted only "in cases where the suit is to be decided in the *last resort*, and where *there is no appeal by means of which, proceedings absolutely void might be set aside.*" C. P. 857.

Consequently, this court can not exercise a jurisdiction by *certiorari* over the respondent's decree, because full relief can be afforded relator on appeal.

It is of the respondent's order of appeal of which the relator complains; and, as in the due course of proceedings, the transcript will be on file in this court within ten days thereafter, it will be in order for him to lodge a motion to dismiss the appeal upon the grounds stated in his petition. Indeed the relator informed this court upon the date of submission that the transcript of appeal had already been prepared by the clerk of court and was in readiness to be filed.

There can not be the least doubt of the rule of practice being, that the regularity and legality of an appeal must be determined by the

*appellate tribunal* acting in the exercise of its *appellate* jurisdiction, and *in the cause on appeal.*

This is the law and the jurisprudence, as well. This identical question was examined and decided in State *ex rel* City vs. Judge, 45 An. 950, wherein the respondent made return that he had granted the appeal (complained of) under and in conformity to the provisions of Art. 571 of the Code of Practice, as he was bound to do.

" That this court had jurisdiction of the parties and of the subject matter of the suit. That the appeal had been perfected, and that his action is not open to review by *certiorari*.

" He further shows that *certiorari* can not be substituted for a motion to dismiss the appeal in question antecedent to the return day thereof."

And upon due consideration of the record in which the appeal was taken and the statement of the respondent judge in his return, we said: " There is no escape from the conclusive force of the reasons assigned by the respondent judge.

\*          \*          \*          \*          \*          \*          \*          \*

" The only purpose of the writ is to test the validity of the proceedings. C. P. 855, 857.

" The case brought up is an appealable one, and the relator's complaint is that it *has been appealed to this court, but improperly.*

" The orderly and proper course for relator to have pursued was to *await action in this court on the appeal.* It has mistaken its remedy."

That opinion forcibly presents the same issues which relator has raised herein. He has offered the writ of *certiorari* as a substitute for a *motion to dismiss an appeal,* before the transcript has been filed or the return day has arrived, contradictorily with the *judge* alone, and in the absence of the appellant.

And in respect to the remedy by appeal we find the controlling principle nowhere more correctly or accurately stated than in State *ex rel.* Meaux vs. Judge, 47 An. 950, in which Justice MILLER, speaking for the court, said: "On a question of the right of appeal, we think the doubt should be resolved in favor of the appeal, especially as on the development of the case the court can dismiss the appeal if it is manifest there is no jurisdiction."

It is manifest that this course can not receive the approval of this court.

State ex rel. District Attorney vs Judge.

Once establish the rule that under a writ of *certiorari* the legality of an order of appeal is intrinsically examinable, and this court would *heap* upon itself a mass of litigation it would be wholly incapable of dealing with. To thus hold would be a departure from our well-established jurisprudence, and at variance with the precepts of the Code of Practice.

Some reference has been made to the case of State *ex rel.* Brouillette vs. Judge, 45 An. 244, as announcing a contrary principle; but this is an erroneous supposition.

The opinion says:

"Ordinarily we exercise such (supervisory) jurisdiction only in *unappealable* cases, leaving errors committed in *appealable* oases to be corrected *in the ordinary course on* appeal.

" But in the instant case it can not be determined whether they are appealable or not until after trial and sentence."

Reference is also made to the case of State *ex rel.* Rocchi vs. Judge, 45 An. 532; but it is sufficient answer to say that the case stated only involved fifty-nine dollars and sixty-five cents, and was not, consequently, appealable to this court; and hence, the only remedy was by *certiorari.* State *ex rel.* DeBuys vs. Judges, 32 An. 1256.

On thorough examination of all the decisions of this court with regard to relief by *certiorari*, we are satisfied that relator is entitled to no relief in the present form of action.

It is therefore ordered and decreed that the provisional order herein rendered be set aside, and relator's demand be rejected at his cost.

### CONCURRING OPINION.

MILLER, J. In my opinion the remedy to dismiss the appeal granted by a lower court when none is allowed by law, is the motion to dismiss. Such motion is determined without oral discussion, admits of speedy decision and gives complete relief. This remedy is, I think, to be deemed settled, and is of constant application in criminal as well as civil cases. In the leading case of Hornsby, where the question discussed was the power of the court to give the accused an appeal from an interlocutory decree overruling his pleas in bar, the court suggested the motion to dismiss would have been sustained if made. State vs. Kennedy, 8 Rob. 590.

With this remedy available to the State, there is, in my opinion, no reason or warrant for interposing our supervisory jurisdiction

conferred for other purposes and limited to such purposes by the uniform jurisprudence of this court.

I concur in the opinion of MR. JUSTICE WATKINS.

### DISSENTING OPINIONS.

NICHOLLS, C. J.    While the framers of the Constitution in dealing with the powers of this court fixed its appellate jurisdiction with extreme care, limiting and controlling it within minutely defined boundaries, they, for reasons which to them were deemed sufficient, placed no restrictions whatever upon its supervisory jurisdiction over inferior courts.    A broader and more comprehensive grant of power could not well be imagined.    When the court as organized under the present Constitution met, thus invested with plenary authority over the subject, it found itself confronted with the danger of being overwhelmed by applications from suitors from every tribunal in the State calling and seeking for relief for supposed wrongs received at the hands of the inferior courts. Self-protection suggested that the court should map out some course of conduct by which, while exercising its powers, it should do so· on certain general lines.

The court therefore through MR. JUSTICE LEVY as its organ announced its intention so to do in the case of State *ex rel.* Sinnott vs. Falls, 32 An. 555.    In reference to Art. 90 of the Constitution conferring supervisory control on the Supreme Court over inferior courts it said: "It gives control and general supervision over all inferior courts and grants the power to issue certain writs without any qualification or limitation limiting the exercise of that power to cases in which it may have appellate jurisdiction.    The use of this power must then be regulated by the discretion of the court, and here it may be well to remark that we think the control and general supervision over inferior courts addressed to our sound discretion should be most carefully administered and exercised only in cases where there is a flagrant usurpation of authority or where serious injury may accrue to parties to whom no other remedies are afforded or where the intermediate courts are without power to grant relief.    Under such circumstances alone will this court be disposed to use this discretionary power."

In the case of State *ex rel.* Pugh vs. Judge, 33 An. 1390, the court spoke approvingly of the reservation made in the Sinnott

case of its power in dealing with exceptional cases, saying: "We prudently made an express reserve of cases in which urgent considerations of public policy might demand our interference." In State *ex rel.* Murray, 36 An. 578, this court said: "In the exercise of the supervisory powers vested in this court by the present Constitution, relief can be allowed in cases of denial of justice in which, under previous Constitutions, none could be awarded. The writ (*mandamus*) may issue at the discretion of the court, where the law has assigned no adequate relief by the ordinary means, and where justice and reason require that some mode should exist of redressing a wrong or an abuse of any nature. Also, even where a party has some other means of relief, if the slowness of ordinary legal forms is likely to produce such a delay that the administration of justice may suffer." In the body of the opinion the court said: "So that if there be a remedy, it is not an adequate one, and if a party entitled to an injunction is refused the same he remains with a right without a remedy, at the mercy of a District Judge, unless the court can interfere and relieve him from the effect of a denial of justice." In that particular case the court said: "No doubt an appeal lies, but if termed suspensive, it is barren of effect." * * * "It does not follow, however," said the court, "that because this court has such power to interpose its authority in cases of emergency and denials of justice, it will thus interfere whatever be the case presented. It will issue the writ in its discretion according to the exceptional features of each case presented."

The court has never gone so far in adopting a general line of conduct as to say that it looked to the articles of the Code of Practice either for the source of its powers or for limitations upon these powers. It has simply utilized and referred to particular articles of the Code of Practice as furnishing safe, conservative guides for its general action. The court has, on the contrary, recognized its absolute power over the whole subject matter. It has acted or refused to act as individual cases were submitted to it, or as they called or did not call, in the exercise of discretion under an unquestionable power, for exceptional relief There will be no difficulty whatever in producing to this court decision after decision of its own that it will not grant relief under its supervisory powers unless the applicant has exhausted his legal remedies in the lower court—that it will not grant relief if the party has a remedy by appeal; but these decisions are

nothing more than announcements in the particular cases that they presented no special features under or through which to invoke a departure by the court from its general line of conduct. · One of the troubles of its adopting such a general course is that in the progress of time the various decisions are supposed to crystalize substantially into laws absolutely and inflexibly controlling the court in its action. Already we hear it said that if such or such a decision were rendered it would overturn the jurisprudence of the State, and so, decisions rendered under a system adopted simply to furnish suitable rules for the orderly administration of justice and for safeguarding the court against being overwhelmed with unreasonable applications have come to be regarded as absolutely tieing the hands of the court in proper cases. I think it not only proper but necessary that this court should from time to time exert this power of reserved action lest suitors and judges should, under these discretionary decisions of the court, successfully come to be able to work wrong and injury without adequate prompt remedy. My views on this subject I announced almost immediately after I came upon the bench. They will be found declared in the cases of State *ex rel.* Rocchi vs. Judge, 45 An. 544; 46 An. 164; State *ex rel.* Lehman vs. Judge *et al.* I am fixed in the opinion that this court should, untrammeled by mere discretionary precedents of its own, be left free to carry out and enforce in exceptional cases its power and duty of keeping inferior tribunals not only inside of their jurisdiction, but from abdicating their jurisdiction. The question here is not as to the correctness or incorrectness of the judge's judgment or ruling touching a change of *venue*—that question can not possibly be reached or be determined by us on a separate substantive appeal from it by detaching it from its proper place as part of the proceedings in which it was made and by attempting to bring a criminal action piecemeal before us. The question before us is as to the order of appeal itself. There is no appeal by the State from that order. Unless the State can be relieved through this court it has forcibly to stay all proceedings until the appeal can be brought up and the appeal dismissed. All that a suitor seeking time would have to do, under such a practice as this, would be just on the eve of trial to take some motion in the case, have it overruled, appeal from it suspensively and force the case over without a remedy on the part of the State to the next term of the court or possibly longer. The

right of the State to ask a dismissal of the appeal when the appeal should come up is not an adequate remedy. Before the case could be brought up and disposed of it might have lost its place on the docket, and it would have on account of an appeal to be indefinitely postponed. The State can not be forced into such a position through a clear, illegal and "flagrant" not "assumption of," but "abdication of" jurisdiction by the District Judge.

There is and could possibly be no difference of opinion among the members of this court as to the power of this court to entertain jurisdiction to review, as a matter of separate appeal, an order of a District Judge overruling temporarily an application for a change of venue with a right reserved to renew the application later. That proposition is outside of the range of debate. If this court is without power to take jurisdiction, the court below was powerless to abdicate jurisdiction. The case of the State vs. Maurice J. Hart is now, in spite of the order of appeal, pending in the Criminal District Court. An absolutely null order is supposed by the judge to stand in the way of a trial—and will have that effect unless brushed away. The State has asked us to do so, as the District Judge declares he is unable to do so, on the ground that the order vested this court with jurisdiction. That position is totally unfounded. We have no jurisdiction. The Criminal District Court has, and should be made to proceed. State ex rel. Chism & Boyd vs. Judge, 34 An. 1177. We exercised our discretionary power of supervising control in the State ex rel. Bruilette vs. Judge, 45 An. 243. One single exercise of that power completely overturns the theory predicated upon our being inflexibly controlled by precedents of our own. I repeat here what I said in the Rocchi case that though the error of the District Judge may have been an error of judgment, it was not one of such a character as that which is referred to in the general use of that term as applied to prohibition, *certiorari* and *mandamus*, and as not forming properly matters for correction through those remedies. The error here is not in respect to the regularity of the proceeding or the facts of the case, but as to the power of the court—an error on that point I think it is our duty to rectify. * * * One of the principal reasons for granting this court supervisory control was to settle questions involving the power and jurisdiction of courts." I am not called on to know what effect this particular order of appeal will have upon a prompt trial of the case in the District Court. The District Attorney

evidently thought it would work improper delay; had he not thought so he would not have invoked our powers. It is enough for me to know that the State has asked at our hands that an absolutely null order which blocks and stays all proceedings below until set aside should be, at once, disposed of and the case be permitted to take its legal and proper course.

I think the relief asked for should be accorded.

BREAUX, J.   The defendant applied for a change of *venue;* after a legal hearing before the court, presided over by the respondent. The application was not granted; the court, in the order refusing to grant the change of *venue,* reserved to defendant the right to renew his motion on the examination of jurors upon their *voir dire.*

The case was assigned for trial. The defendant moved for an appeal from the order denying a change of *venue.*

The motion was granted.

The relator prays for an order directing the trial judge to vacate the order of appeal and reinstate the case.

The respondent returns that the order of appeal was lawful, and that he is divested of jurisdiction for the time being; that his action is not reviewable in the proceedings here; that the facts and the law on the application for a change of *venue* are reviewable, and if he has committed an error the remedy is by motion to dismiss the appeal.

With reference to the first ground:

I agree, in a criminal case, the proceedings in the court of the first instance are superseded and arrested for the time being, but must add by an order of appeal, though it may be voidable.

But if the order is absolutely null and void it should not have the effect of bringing the court to a standstill until the case is reached on appeal.

The questions are, in the first place, is the order void; in the second place, is the remedy to set it aside within the supervisory jurisdiction of this court?

The following precedents are pertinent and affirmatively answer the first question:

"On general principles, an appeal from an interlocutory order or judgment in criminal matters does not lie."

"An appeal in criminal matters is regulated by the common law

rules of practice, except when modified by our own statutes, and the common law practice in criminal trials does not know such a proceeding as an appeal from an order (or judgment, if you will) overruling a plea which does not determine the case." State vs. Wilkins, 37 An. 62.

Again, the right of appeal in a criminal case arises after verdict and sentence, and not from questions not disposing of the merits of the cause. *Ex parte* Mitchell, 1 An. 413; State vs. May, 9 An. 69; State vs. Pratt, 9 An. 157; State vs. Johnson, 36 An. 306.

In State *ex rel.* Cook vs. Keeper, 15 An. 347, the question is treated as jurisdictional, and it was held that there must be *a final judgment* before an appeal can be taken.

Mr. Wharton, under Sec. 775 of his book on Criminal Pleading, of " error " says: " It does not lie till after judgment. It is essential to the just administration of penal law."

The purpose of the order of appeal is to enable one to obtain a hearing before the court of appeals. When it is manifest that under no circumstances the court has jurisdiction it must follow that the order granting the appeal is absolutely null.

It is obvious that under the law and in accordance with the authorities, this application on appeal can not be heard at the period in the proceedings at which the order was granted.

A motion for the want of jurisdiction may be made at any time for the reason that the proceedings in that case are absolutely null.

If this court is without jurisdiction the order of appeal should not hinder and obstruct the jurisdiction of the court of the first instance.

"Cases may be supposed in which a remedy (*mandamus*) would be proper and warranted by analogy. Some instances are mentioned in the cases cited, as where a judicial tribunal declines taking cognizance of a case within its proper jurisdiction." Moses on *Mandamus*, p. 51.

Having thus concluded in regard to the nullity of the order of appeal, the second question arises, can the remaining issue be determined by this court under its supervisory powers?

At the time that, to this court, was given the " control and general supervision over all inferior courts " it had been settled, at common law, that if anything occurred in the proceedings of the court of the first instance " differing from the regular course of the common law" the writ of *certiorari* was a remedy.

Shortly after the present Constitution had been adopted, in regard to the functions of that writ and of the writ of *mandamus* the interpretation was, as I appreciate, in accord with the common law.

From State *ex rel.* Pugh vs. Judge, 33 An. 1381-1391, I quote: "It issues at the discretion of the court, even where the party has other means of relief." See also State *ex rel.* Judge, 32 An. 549, 552; State *ex rel.* Murray vs. Judge, 36 An. 578, 583; State *ex rel.* Lehman vs. Judge, 46 An. 175.

In the case of the State *ex rel.* Brouillette vs. Judge, 45 An. 243, the District Court had granted a change of *venue.* This court annulled the order and reinstated the case; although there was a possibility of a hearing on appeal from the sentence or of a hearing in the exercise of our supervisory control if the sentence had been for less than the appellate amount.

The relator was not compelled to resort to an appeal; his grounds of nullity of the order changing the *venue* were considered and relief granted in the exercise of the supervisory jurisdiction of this court.

The State should not be forced to await the action of an appellant in order that it may have opportunity to have declared null an order which is absolutely null.

I therefore dissent.